UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| THE CONNAUGHT GROUP, LTD., | : | Case No.: 12-10512 (SMB) |
| *et al.*, | : | Substantively Consolidated |
| | : | |
| Debtors. | : | |

------------------------------------------------------X

| | | |
|---|---|---|
| MARTINA SCHUMAN, on behalf of | : | |
| herself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | Adv. Proc. No. 12-01051 (SMB) |
| | : | |
| THE CONNAUGHT GROUP, LTD., | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------X

## MEMORANDUM DECISION GRANTING
## MOTION FOR CLASS CERTIFICATION

**A P P E A R A N C E S :**

OUTTEN & GOLDEN LLP
Attorneys for Plaintiff
3 Park Avenue, 29th Floor
New York, NY 10016

> Jack A. Raisner, Esq.
> René S. Roupinian, Esq.
>      Of Counsel

LOWENSTEIN SANDLER LLP
Attorneys for Defendant
1251 Avenue of the Americas, 18th Floor
New York, NY 10020

> Bruce Buechler, Esq.
> Shirley Dai, Esq.
>      Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff filed this adversary proceeding on behalf of herself and all other similarly

situated persons asserting claims under the Federal and New York State Workers Adjustment

and Retraining Notification Acts (collectively, the "WARN Act").  (*See* Complaint, dated Feb.

14, 2012 (ECF Doc. 1).)[1]  She has moved to certify the class.  The Connaught Group Creditors'

Liquidating Trust (the "Trust"), the successor to the Debtors under their confirmed plan, opposes

the motion.  The Court grants the motion for the reasons that follow.

## BACKGROUND

The debtor The Connaught Group, Ltd. ("Connaught") was engaged in the business of

designing and selling fashion apparel for women.  (Complaint at ¶ 4.)  Its headquarters were

located at 423 West 55th Street in Manhattan, and it also operated facilities at 16 East 52nd

Street in Manhattan and in Long Island City, New York.  (*Id.* at ¶¶ 3-4.)  The plaintiff worked at

the East 52nd Street address.  (*Declaration of Martina Schuman in Support of Plaintiff's Motion

for Class Certification and Related Relief*, dated Dec. 6, 2012 ("*Schuman Declaration*"), at ¶ 4.)[2]

On January 30, 2012, Connaught terminated her employment along with the employment

of 67 people at the East 52nd Street facility and approximately 27 employees at the Long Island

City facility.  (*Id.* at ¶¶ 5-7.)  According to the plaintiff, she did not receive at least 60 days'

written notice of termination and, to the best of her belief, neither did any of the other former

employees who were terminated on or about that date.  (*Id.* at ¶ 6.)  The plaintiff calculates that

an award of 60 days' pay would come to $6,720.00, not including benefits.  (*Id.* at ¶ 12.)

---

[1]      Citations to "ECF" refer to the electronic docket in this adversary proceeding.  Citations to "Main Case/ECF" refer to the electronic docket in the bankruptcy case.

[2]      A copy of the *Schuman Declaration* is annexed as Exhibit A to the *Memorandum of Law in Support of Plaintiff's Motion for Class Certification and Other Relief*, dated Dec. 6, 2012 ("*Plaintiff's Memo*") (ECF Doc. 19).

A.       **The Bankruptcy**

The Debtors filed their chapter 11 petitions in this Court on February 9, 2012, and the

plaintiff commenced this class adversary proceeding five days later.  The putative class includes

Connaught's former employees "who worked at or reported to one of Defendant's Facilities and

was terminated without cause on or about January 30, 2012, and within 30 days of that date, or

was terminated without cause as the reasonably foreseeable consequence of the mass layoffs

and/or plant closings ordered by Defendant on or about January 30, 2012."  (Complaint at ¶ 9.)

Following the commencement of the adversary proceeding, representatives of the

plaintiff and the Debtors agreed to stay the adversary proceeding for 90 days to allow counsel to

discuss the financial condition of the Debtors' estates.  *Schuman v. Connaught Group, Ltd. (In re*

*The Connaught Group, Ltd.)*, Adv. Proc. No. 12-01051, 2013 WL 413589, at *1 (Bankr.

S.D.N.Y. Feb. 1, 2013).  After the conclusion of the stay, the parties presented a stipulation that

the Court "so ordered," setting a deadline of October 12, 2012, for the plaintiff to file a motion to

certify the class.  *Id.*  Separately, the parties agreed to extend the bar date for filing WARN Act

claims until September 30, 2012,[3] and the plaintiff filed a class proof of claim on September 28,

2012.

The Debtors confirmed a liquidating plan on October 10, 2012, two days before the

deadline for the certification motion.  (*See Order Confirming the First Amended Joint Plan of*

*Liquidation*, dated Oct. 10, 2012 ("*Confirmation Order*") (Main Case/ECF Doc. 529).)  The

plaintiff failed to make the certification motion by the deadline, and the failure prompted the

---

[3]        The Court had set a bar date of May 21, 2012 for all other pre-petition claims.  (*See Order Establishing
Deadline for Filing of Proofs of Claim and Approving Form and Manner of Notice Thereof*, dated Apr. 6, 2012
("*Bar Date Order*") (Main Case/ECF Doc. 177).)

Trust to move to dismiss the adversary proceeding for disobeying the scheduling order.  The

Court refused to dismiss the Complaint, noting that the noncompliance with the scheduling order

was solely the fault of the plaintiff's attorney and the attorney should bear the brunt of any

sanction.   "The dismissal of the adversary proceeding *or even the denial of the motion to certify*

*the class* would fall primarily on the plaintiff and the class and, for that reason, would be too

drastic."  *Connaught Group*, 2013 WL 413589, at *3 (emphasis added).  Instead, the Court

directed the plaintiff's attorneys to pay the Trust's reasonable expenses, including attorneys'

fees, incurred in making the motion.  *Id.*

**B.      The Class Certification Motion**

The plaintiff made the certification motion on December 6, 2012, approximately seven

weeks after the deadline.  The Trust opposes her motion.  It argues that the plaintiff is not an

adequate class representative because she holds, at best, a priority claim, while other members of

the class who were fired after the petition date may hold administrative claims.  In addition, the

Trust makes several bankruptcy-specific arguments against allowing the discharged employees

to proceed with their claims as part of a class proof of claim.  These include the fact that class

certification will result in the extension of the bar date for those who did not file individual

claims, certification will increase costs and delay the administration of the case and, more

generally, that class actions are inconsistent with and detrimental to the claims resolution process

and administration of the bankruptcy case.  (*Defendant's Memorandum of Law in Opposition to*

*Plaintiff's Motion for Class Certification*, dated Feb. 25, 2013 ("*Defendant's Memo*"), at ¶¶ 1-5,

7 (ECF Doc. 32).)

**DISCUSSION**

Rule 23 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7023 of the Federal Rules of Bankruptcy Procedure, governs class actions. Rule 23(a) establishes four prerequisites that must be satisfied in order for a suit to proceed as a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(A).

In addition, the plaintiff must satisfy one of the subparagraphs in Rule 23(b). Here, she relies on Rule 23(b)(3), which states that a class action may be maintained if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

While the issue before me concerns the certification of the class in the adversary proceeding and not the proof of claim, it is difficult to separate the two issues. Despite the different procedural requirements, including that Rule 23 does not automatically apply to the claims allowance process, it appears that the substantive inquiry is the same. More importantly, the class cannot participate in a distribution unless it has filed and holds an allowed proof of claim. *See* FED. R. BANKR. P. 3003(c)(2).[4] It would be anomalous to certify the class in the

---

[4]    Rule 3003(c)(2) states:

adversary proceeding but refuse to allow the representative to file a class proof of claim,

especially in the case of WARN Act claims which are "particularly amenable to class litigation."

*Guippone v. BH S & B Holdings LLC*, 09 Civ. 1029 (CM), 2011 WL 1345041, at *2 (S.D.N.Y.

Mar. 30, 2011); *accord Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 487 B.R.

169, 179 n.8 (Bankr. S.D.N.Y. 2013) (collecting cases).   Thus, whether the Complaint serves as

an informal proof of claim or the focus is on the formal proof of claim, the Court must ultimately

decide whether to certify the class in connection with the claims allowance and distribution

process.[5]

## A.    Rule 23(a)

Although not challenged by the Trust, the plaintiff has satisfied the requirements for

numerosity, FED. R. CIV. P. 23(a)(1), commonality, FED. R. CIV. P. 23(a)(2), and typicality.  FED.

R. CIV. P. 23(a)(3).  In the Second Circuit, courts presume that joinder is impracticable when the

prospective class consists of 40 or more members.  *Robidoux v. Celani*, 987 F.2d 931, 935-36

(2d Cir. 1993); *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003);

---

Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as
disputed, contingent, or unliquidated shall file a proof of claim or interest within the time
prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as
a creditor with respect to such claim for the purposes of voting and distribution.

[5]       In *Dewey & LeBoeuf*, the Court concluded that a WARN Act claim had to be asserted in the form of an
adversary proceeding rather than a proof of claim because the claim sought equitable relief.  487 B.R. at 176-78.
Bankruptcy Rule 7001(7), which requires an adversary proceeding "to obtain an injunction or other equitable relief,"
supports this conclusion.  On the other hand, the plaintiff and the putative class members are asserting a "right to an
equitable remedy for breach of performance" that "gives rise to a right to payment," and the Bankruptcy Code
defines this right as a "claim."  11 U.S.C. § 101(5)(b).  Here, the Court ordered all creditors holding claims within
the meaning of Bankruptcy Code § 101(5) to file proofs of claim by the bar date.  (*See Bar Date Order*  at 1.)
Furthermore, the parties negotiated an extended date by which WARN Act claims had to be filed.  All of this
implies that the plaintiff had to assert the WARN Act claims in an adversary proceeding as well as a proof of claim.
This is unnecessarily duplicative and suggests that the better approach in a WARN Act case is to treat the adversary
proceeding as the proof of claim.

*Guippone*,  2011 WL 1345041, at *4.  The proposed class in this case consists of approximately

100 former employees, and joinder is, therefore, impractical.

The commonality and typicality requirements tend to merge as they are subject to similar

considerations.  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see Gen. Tel. Co. of*

*Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "Both serve as guideposts for determining

whether under the particular circumstances maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at

157 n.13.  Demonstrating commonality is a "minimal burden for a party to shoulder." *Lewis*

*Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002).  "A single common

question may be sufficient to satisfy the commonality requirement" and "'[t]he critical inquiry is

whether the common questions are at the 'core' of the cause of action alleged.'" *Vengurlekar*,

220 F.R.D. at 227 (quoting *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.

1996).  "Typicality, by contrast, requires that the claims of the class representatives be typical of

those of the class, and 'is satisfied when each class member's claim arises from the same course

of events, and each class member makes similar legal arguments to prove the defendant's

liability.'" *Marisol*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group Inc.*, 960

F.2d 285, 291 (2d Cir. 1992)).

Here, the common questions include whether the members of the class were employees

of Connaught, and whether they were terminated on or about January 30, 2012, without

receiving sufficient notice.  Furthermore, the plaintiff's claims are typical because she alleges

that, like the approximate 100 members of the class, she is a former employee of Connaught who

was a victim of the mass layoff effected on or about January 30, 2012, without the requisite

WARN Act notice.

The Trust nonetheless argues that the plaintiff cannot fairly and adequately represent the

proposed class, FED. R. CIV. P. 23(a)(4), because the proposed class includes former employees

who were fired both pre-petition and post-petition and enjoy different priorities under the

Bankruptcy Code. (*Defendant's Memo* at ¶¶ 60-63.)  To satisfy Rule 23(a)(4), the plaintiff must

meet two requirements.  "First, class counsel must be 'qualified, experienced and generally able'

to conduct the litigation.  Second, the class members must not have interests that are

'antagonistic' to one another."  *Drexel Burnham*, 960 F.2d at 291; *accord Vengurlekar*, 220

F.R.D. at 227.

The Trust has not challenged the qualifications of plaintiff's counsel.[6]  Instead, it argues

that the plaintiff was terminated pre-petition, and her interests conflict with those class members

who were terminated post-petition.  In support, the Trust cites several cases that stand for the

proposition that the WARN Act claims of employees that were terminated pre-petition are not

entitled to an administrative priority, *Binford v. First Magnus Fin. Corp. (In re First Magnus*

*Fin. Corp.)*, 403 B.R. 659, 666 (D. Ariz. 2009); *Barnett v. Jamesway Corp. (In re Jamesway*

*Corp.)*, 235 B.R. 329, 348 (Bankr. S.D.N.Y. 1999); *see Mondragon v. Circuit City Stores, Inc.*,

Adv. Proc. No. 09-03073 (KRH), 2010 WL 120014, at *4 (Bankr. E.D. Va. Jan. 7, 2010)

(WARN Act claim arises at the time the employer fails to give the required notice), but only to a

---

[6]     The Trust does argue that the plaintiff is an inadequate representative because she failed to file the
certification motion by the Court-ordered deadline. (*Defendant's Memo* at ¶ 64.)  As discussed earlier and again in
the succeeding text, the Court sanctioned the plaintiff's counsel for that failure but expressly refused to dismiss the
Complaint or deny class certification, concluding that the plaintiff and the putative class members should not pay the
price for counsel's fault in this circumstance.  The Trust has not identified any other order that the plaintiff or her
counsel ignored, and its argument lacks merit.

lower priority under 11 U.S.C. § 507(a)(4) and (5).  *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, 394 B.R. 765, 777 (Bankr. D. Del. 2008).  The Trust then identifies the following conflict:

> In contrast, several Proposed Members were allegedly terminated post-petition will doubtless want to argue that they hold administrative claims against the estate.  Nevertheless, the more funds that are paid to administrative claimants, the less that will be available to lower priority claimants like Plaintiff.  Thus, Plaintiff appears to have a direct conflict of interest with the Proposed Members who were terminated post-petition.

(*Defendant's Memo* at ¶ 63 (footnote omitted).)

Although employees terminated pre-petition and post-petition may have different rights under the Bankruptcy Code, the distinction makes no difference in this case.  The Debtors' confirmed plan treats administrative and priority claims in the same manner – payment in full on the Effective Date.  (*See First Amended Joint Plan of Liquidation Pursuant to Chapter 11of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, (the "*Plan*"),[7] at Art. II.A (describing treatment of administrative claims); Art. III.B.I(b) (describing treatment of priority claims).)  Consequently, the administrative and priority creditors have the same rights to distribution, and a member of either class can adequately represent the interests of both classes.

## B.    Rule 23(b)(3)

The Trust contends that questions of law and fact common to the proposed class members do not predominate over questions affecting only individual members, and the class action is not superior to the bankruptcy process for fairly and efficiently adjudicating the controversy.  FED. R. CIV. P. 23(b)(3).  The former argument is based on the distinction between the rights of pre-

---

[7]     A copy of the *Plan* is annexed as Exhibit A to the *Confirmation Order.*

petition and post-petition WARN Act creditors, (*Defendant's Memo* at ¶¶ 65-68), and is rejected

for the reasons just discussed.

The latter argument focuses on the aptness of certifying creditor classes in bankruptcy.

Class claims should be used sparingly in bankruptcy.  *In re Sacred Heart Hospital of*

*NorrisTown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).  The bankruptcy claims resolution process

allows creditors to assert small claims cheaply and efficiently in a single forum, s*ee In re Teta v.*

*Chow (TWL Corp.)*, No. 12-40271, 2013 WL 1285294, at *8 (5th Cir. Mar. 29, 2013), and the

superiority inquiry under Rule 23(b)(3) essentially comes down to whether the class action is

superior to the bankruptcy claims resolution process.[8]  *Id.* at *7 (quoting 10 ALAN N. RESNICK &

HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 7023.03[3], at 7023-12 (16th ed. 2012)).

"[B]ankruptcy significantly changes the balance of factors to be considered in determining

whether to allow a class action and . . . class certification may be 'less desirable in bankruptcy

than in ordinary civil litigation.'"  *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y.

2005) (quoting *In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988)); *accord Musicland*,

362 B.R. at 650.  In making its decision, the bankruptcy court should consider whether the class

was certified pre-petition, whether the members of the class received notice of the bar date and

whether certification will adversely affect the administration of the estate.  *TWL*, 2013 WL

1285294, at *7; *Musicland*, 362 B.R. at 654; *In re Motors Liquidation Co.*, 447 B.R. 150, 166

(Bankr. S.D.N.Y. 2001).

---

[8]      In *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007), the Court stated that the
bankruptcy-specific factors should not be conflated with the Rule 23 analysis.  *Id.* at 654 n.11.  In *TWL*, the Fifth
Circuit considered these factors as part of the "superiority" inquiry under Rule 23(b)(3).  This Court will follow the
same approach.

Before addressing these considerations, I turn to the issue of the statute of limitations which may be driving the Trust's opposition to the certification motion. The Trust argues that granting the certification motion will effectively extend the bar date for those WARN Act creditors who failed to file timely claims. According to the Trust, all but four putative class members received actual notice of the bar date, and only six filed individual claims. The rest sat on their rights. Extending the bar date through class certification will allow creditors that did not file claims to receive a distribution and significantly increase the amount of administrative and priority debt.

The bar date, however, has already been extended. "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (footnote omitted); *accord Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983) *Official Committee of Asbestos Claimants v. G-I Holding, Inc.*, 277 B.R. 20, 30 (S.D.N.Y. 2002) ("As a general rule, statute of limitations periods are suspended against putative class members from the time a class action is filed until class certification is denied, or, if state law applies and permits, upon decertification."). The tolling rule satisfies the policies of ensuring essential fairness to the defendants and barring stale claims because the class action "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 554; *Crown, Cork*, 462 U.S. at 352. The rule also eliminates the need for individual members of a class to file their own actions or intervene in the pending action to preserve their rights before the decision on certification is

made – "precisely the multiplicity of activity which Rule 23 was designed to avoid." *American Pipe*, 414 U.S. at 551.

If a class action was filed prior to the running of the statute of limitations and class certification is denied, the tolling of the statute of limitations will give the class members additional time to assert their individual rights. *See Crown, Cork*, 462 U.S. at 354; *G-I Holding, Inc.*, 277 B.R. at 32. Furthermore, the class members do not have to demonstrate that they refrained from taking individual action prior to the expiration of the statute of limitations in reliance on the pendency of the class action. *American Pipe*, 414 U.S. at 552 ("[E]ven as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and in its ultimate judgment.").

The same tolling rule applies in bankruptcy. If the representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims. *TWL*, 2013 WL1285294, at *10 (addressing a class adversary proceeding); *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) (addressing a class proof of claim).[9] As noted, the plaintiff filed this adversary proceeding long before the May 21, 2012 bar date. The plaintiff and the estate also agreed to extend the bar date for WARN Act claims, and the plaintiff filed a timely class proof of claim on September 28, 2012. The timely adversary proceeding (as well as the timely proof of

---

[9]     In *Musicland*, the Court stated that allowing the class proof of claim would extend the bar date for creditors who had received notice of the bar date and slept on their rights, 362 B.R. at 656, and denied a motion to certify the class for this and other reasons. *Id.* at 656-57. However, the putative class representative in *Musicland* did not argue that the class proof of claim tolled the bar date for filing individual claims or that the Court should set a new bar date for the putative class members if it denied the motion.

claim) tolled the running of the bar date.  Thus, even if I deny the class certification motion, I would fix a new bar date for individual WARN Act claims.

Returning to the specific bankruptcy considerations, the class was not certified pre-petition but this is not surprising or significant.  Connaught discharged the class members a few days before the bankruptcy cases were commenced and before litigation could have occurred, much less class certification within that litigation.  In essence, this is a class created by the bankruptcy itself.  Hence, this factor cannot be entitled to any weight because it would foreclose WARN Act classes in virtually all bankruptcy cases.  Similarly, while virtually all of the class members, including the plaintiff, received notice of the bar date, and could have filed individual claims (six did), the filing of the class adversary proceeding (and class proof of claim) tolled the deadline.  The class members are not required to show that they relied on the class adversary proceeding (or class proof of claim), and penalizing the class members for failing to file individual claims prior to the bar date would result in "precisely the multiplicity of activity which Rule 23 was designed to avoid."  *American Pipe*, 414 U.S. at 551.

Instead, the principal consideration must be the effect of the class certification on the administration of the estate.  If the class plaintiff sits silently and does not raise the issue of certification until after the plan has been negotiated, and certification would adversely affect the timing or possibility of confirmation, there are good reasons to deny certification and prevent the proposed class from gumming up the works.

*Musicland* illustrates this situation.  There, the representatives commenced a pre-petition class action in state court alleging that the debtor had denied the putative class overtime pay in violation of state law.  362 B.R. at 647.  That action was stayed by the bankruptcy filing before a

class was certified. *Id.* The attorney for the representatives filed a class proof of claim and also

filed individual claims on behalf of the two representatives. *Id.* at 648. The class proof of claim

asserted a wage priority in excess of $1.2 million. *Id.*

The class representatives took no further action, and the case proceeded. The debtors

negotiated a plan that could only be confirmed if the allowed administrative and priority claims

did not exceed $5.8 million, and the disclosure statement estimated that the priority debt would

not exceed $500,000. *Id.* at 649. The Court approved the disclosure statement, and the debtor

sent the plan, disclosure statement and ballots to the attorney who had filed the class claim and

the representatives' individual claims. *Id.* Neither representative voted, and the plan was

overwhelmingly accepted. *Id.* The Court commenced the confirmation hearing, but because the

unresolved administrative and priority claims exceeded $5.8 million, the trial of the feasibility

issue was adjourned *sine die*. *Id.*

Approximately ten days after the confirmation hearing began, the representatives filed

their motion for class certification. *Id.* In denying the motion, the Court observed, *inter alia*,

that "the class claim would seriously delay the administration of the case, a fact exacerbated by

the delay in making the certification motion." *Id.* at 656. Approximately 2,800 timely claims

had been filed, and the Official Committee of Unsecured Creditors stated during oral argument

that it was not even aware of the class claim until the certification motion. *Id.* at 651. By the

time the representatives made their certification motion, the plan had been negotiated and filed,

the Court had approved the disclosure statement, the creditors had voted on the plan and the

confirmation hearing had commenced. *Id.* The introduction of a potential $1.26 million wage

priority claim would extend the proceedings indefinitely, jeopardize feasibility and confirmation

and, even if the plan could be confirmed, delay distributions until every class members' claim

14

was resolved. *Id.* at 656-57. In short, the combination of the laches, surprise and prejudice doomed the certification motion.

The facts in this case are starkly different. The plaintiff asserted her class claim at the beginning of the case. She filed her Complaint five days after the petition date, and Connaught and the Official Committee of Unsecured Creditors (the "Committee") were aware of the class claim and the intent to press it. The Debtors and the plaintiff agreed to a series of stays to allow the parties to engage in informal discovery. They extended the WARN Act bar date to September 30, 2012 and stipulated to give the plaintiff until October 12, 2012 to make her class certification motion. *Connaught*, 2013 WL 413589, at *1-2. The Debtors and the Committee negotiated a plan, and the Debtors proposed a plan, with full knowledge of the unresolved class claim. The Court confirmed the plan before the deadline for making the certification motion had even passed. *See id*, at *2. Furthermore, there are sufficient funds to pay the claims if they are allowed, and there allowance will not jeopardize the consummation of the plan. If the resolution of the certification issue was as urgent to the administration of this case as the Trust now argues, (*see Defendant's Memo* at ¶ 47 n.9), the Debtor is equally responsible for any delay.

Moreover, the Trust has failed to explain how a delay from October 12, 2012 until December 6, 2012, the date the plaintiff made the class certification motion, will have material effect on the administration of this estate. Nor would delay alone justify denial of the certification motion. The Court addressed this precise issue in connection with the Trust's motion to dismiss the Complaint based on the disobedience of the scheduling order. The Court sanctioned plaintiff's counsel, but declined to dismiss the complaint or deny certification of the class, concluding that the plaintiff and the class should not bear the brunt of counsel's disobedience of the Court's order. *Connaught*, 2013 WL 413589, at *3. Denying class

15

certification now for the same delay without any showing of prejudice would basically grant the

Trust the same relief that the Court previously denied.

Finally, if I deny the class certification and extend the bar date for the WARN Act

claimants, the delay may be as great or greater than if I grant the motion.  Some number, perhaps

most of the putative class members will then file claims.  The Trust will have to examine every

filed claim anyway.   The Defendant's Answer to the Complaint, dated July 2, 2012 (ECF Doc.

10), indicates that the Trust will raise certain objections applicable to each WARN Act claim.

The Answer read against the corresponding allegations in the Complaint shows that Connaught

denied all of the material allegations of the claims, including:  that it was an employer within the

meaning of the WARN Act, that the plaintiff and similarly-situated employees were employees

within the meaning of the WARN Act, and that Connaught did not give the notice required by

the WARN Act.  The Answer also asserts several defenses applicable to all claims, including

that:  "Defendant was actively seeking capital which, if obtained, would have enabled Defendant

to avoid or postpone any alleged mass layoff and/or plant closing and Defendant in good faith

believed that giving any notice required would have precluded Defendant from obtaining the

needed capital, " (¶ 58); "[a]s of the time Plaintiff alleges notice under the WARN Act and NY

WARN ACT was required, business circumstances had occurred that caused the termination of

Plaintiff's and other Defendant employees' employment and the shutdown of Defendant's

operation was not reasonably foreseeable, (¶ 59); and "Defendant's actions were taken in good

faith and with a reasonable belief that its acts were in compliance with all applicable laws." (¶

60.)  If the Trust objects to all of the claims on the same basis, the objections will be

consolidated, *see* FED. R. BANKR. P. 9014(c) (providing, *inter alia,* that FED. R. BANKR. P. 7042

applies in contested matters), and the parties will effectively litigate the same class action.

Accordingly, the motion to certify the class is granted.  The Court has considered the other issues raised by the parties, and to the extent these issues have not been addressed in this opinion, concludes that they lack merit.  The plaintiff is directed to settle an order on notice and arrange a pre-trial conference with chambers.

Dated:  New York, New York
         April 16, 2013


                                        /s/  *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge